And we'll move on to the final case for argument this afternoon, Nguyen v. USCIS. Mr. Weiss, you may proceed whenever you're ready. Good afternoon. May it please the Court, my name is Jonathan Weiss and I'm here representing plaintiff's appellants. I'm going to endeavor to reserve two minutes and I will watch the clock. So there's debate in this country right now about whether Congress is capable of doing anything, but we do know they're capable of doing at least one thing, and that is spelling the word lawful. And the reason we know that is because when looking through the Immigration and Nationality Act, you come across that word over and over again. Even the version of the EB-5 statute that's at issue in this case has the word lawful in it, but it doesn't have the word lawful in it with respect to capital. We can draw from this that the absence of the use lawful is an intentional omission by Congress. It's not silence. It's a choice made in the statutory language. So you think Congress intentionally chose to pass a statute in which the source of the capital used to qualify for an E-5 visa could be illegal? I think that's what the language that's called. That's not what I'm asking. I'm saying you said it was an intentional choice. So I'm asking you whether it may – I'm not sure that it was an intentional choice. It may have been an inadvertent failure to include the language, or it may have been some other understanding. But you said it was an intentional choice not to use the language, and that suggests to me that you believe that Congress intended that the use of illegal – of ill-gotten gains could be – could qualify you for an E-5 visa. Is that – do you really have – do you really need to find that? We don't need to. The intent of Congress is irrelevant. What's important is the accepted public meaning of the language Congress chose. We accept statute as being intended to be logical. Is there any logic behind Congress not caring about the source of funds because it omitted the word lawful in a particular place? There is logic to it because what you have is people coming from other countries trying to revitalize American communities, and they are coming from countries that don't have the same robust record-keeping requirements we have here in the United States. So Congress could say, you know, the program will not work as intended if we burden these investors with hoops that they can't jump through. Congress could also say, you know, the rest of the world has values that are very different than we have here in the United States, and if we're going to hold someone responsible for violating, you know, a foreign law, that's – What do you do with the congressional committee report? I mean, I know what Justice Scalia would say. He would say, you can't pay attention to that stuff. But assume I'm not Justice Scalia. I've got a committee report that says – that's a reasonable assumption. Yes, indeed. Probably in his favor. The committee intends that the processing and litigation not continue if it becomes known to the government that the money invested was obtained by the alien through other than legal means. So why isn't the government entitled to inquire whether it came from other legal means? So with that, the government can inquire, but what the regulation does is more than just the government inquiring. It's putting a burden on investors to prove their own innocence. Who's in the best position to explain where the funds came from but the person providing the funds? And then at the next stage – Is there an answer to that question? Is there anybody in a better position than the investor to explain where the money came from? And the investor has to answer for his conduct when he's screened for inadmissibility at the second stage of this analysis when he's applying for a visa after the petition's approved. We have Congress designing a two-step analysis. First, you get your immigrant visa approved. Then you apply for a visa and show that you're admissible. And there's a whole long list of analysis. I went through the long list of inadmissibility requirements. Is one of them that the qualifying money came from an illegal transaction? In other words, you may be disqualified if you're a criminal and being convicted of something or whatever, but I don't see any disqualifying. Which particular list of the disqualifying conditions are you relying on? If there's reason to believe that you're a drug trafficker. Okay, well, but so it's okay if you robbed a bank. Robbing a bank is a crime involving moral turpitude, so there's that. And when you look – So in your view, every illegal source of funds, every source of funds that is not legal is covered by the conditions? Well, maybe it's not, but you have to think that if Congress didn't create a ground of inadmissibility, and in fact they wanted people who committed those crimes to be admissible. But the grounds of inadmissibility are meant to cover things other than the E-5 visas, aren't they? They're meant to cover all types of visas. That's right. Yes, and – I'm sorry, go ahead. No, but I mean, so if Congress thought that they already had a requirement, as indicated by the committee report, and maybe by the regular re-adoption of the E-5 program after the regs were promulgated, there was already a requirement to prove the legality of the funds, why would they need to add it into the list of inadmissibility conditions that deal with cases where funds aren't involved at all? We're talking about the character of the applicant. Well, whether they – first, our case doesn't involve the character of the applicant. No, it doesn't. Right? It involves the character of a third party. But don't the inadmissibility conditions involve the character of the applicant as opposed to the character of funds used to qualify for a particular program? And I guess my response to that would be that's what Congress is interested in, the character of the applicant. We have no indication from the text of the statute that Congress is interested in the money. We have from the agency being interested in the money. We certainly know that. But they don't use the normal tools of statutory interpretation to anchor their interest. They look at one snippet of legislative history. And just to go back to the committee report. To be fair, this is the problem with statutory construction. Brian Garner once said, you give me an axiom on one end, I can give you an axiom on the other. But you have canon. You at least have a canon that says Congress's regular re-adoption of a program after regulation has been promulgated by an agency is an indication that it doesn't disapprove of the regulation. So I'm not sure that that theory survives Bostock. In Bostock you had the EEOC put out adoptions of Title VII that said it doesn't address discrimination on the basis of sexual orientation. You had Congress amend the statute heavily after that agency action. And you had Justice Gorsuch say it doesn't really matter. It may not really carry the day in the end, but it's a canon. In other words, what happened in that case was Justice Gorsuch said, we don't read the statute as providing for the interpretation that they arrived at. And that's a fair point you make here. We don't read the statute as providing for their interpretation. But if we're talking about applying canons of construction, they are applying canons of construction. You're just arguing that we don't need to apply any canons of construction because I'm a textualist. Yes? Our brief is textualist, yes. And that's what our argument is, and that's how the Supreme Court says we do statutory interpretation now. So the other issue with their adoption by ratification argument is when you look at what Congress actually did all the way up until the EB-5 Reform and Integrity Act is they changed the date of the expiration of the regional center program. They didn't address major issues. If you look at the Bob Jones case they cite, that involved something different where Congress really went down into detail. There was a lot of public debate. Here we have something completely different. The amendments are highly technical, and when they actually do get around to changing their approach to capital and the statute in the EB-5 Reform and Integrity Act, it actually helps us because Congress does not adopt a version of the statute that would make my client fail to establish a lawful source of funds. They say that you don't have to prove the source of funds obtained from third parties unless they fall into two narrow categories, non-bank lenders or donors. All you have to do with people who helped you move the money. Does that help you or hurt you? I'm not sure. It strikes me as a neutral factor, but it seems to me that Congress is presumed to be changing the law when they enact something. So they have now enacted a narrower bar than was in the past. At least that's the government's argument. My argument is they put in a definition of capital that includes reference to a lawful source, and that must be changing something too because that wasn't in the original statute. So I do want to turn to the regulation quickly while I have a few minutes. Section J-2, Section J-3. They're two different sections. They do two different things. J-3, we have with respect to the section about source of funds, the lawful capital, that's ultravirus. That's our argument. But we have with the section regarding path of funds, no language about anything being lawful. I wanted to ask you about that. Assuming I don't accept the ultravirus argument, that they're entitled to require proof of lawful capital, why doesn't the second logically follow from the first? Well, I think that the reason the second doesn't is that would justify only the regulation that says lawful source of funds. There's a second regulation that doesn't say lawful source of funds. It says path of funds. Right. But let's assume just for purposes of discussion that you have to show a lawful source of funds. Sure. Isn't it just a reasonable mechanism to say I want to know the pathway of these funds because that will help me determine whether or not they are lawful or not? Well, you can think that Congress didn't want drug dealers using their program, but I don't think that would say that. You can draw from that, that Congress didn't want people to evade foreign currency export rules when those foreign currency export rules have the purpose of creating an unfair trade advantage against the United States. Isn't that your ultravirus argument? In other words, what you're saying is the funds aren't unlawful in the first instance because they're not. The only illegality may be because they came through a mechanism that may have violated Vietnamese law. But that's not an argument about why the reg is no good. It seems to me if they're entitled to inquire as to the legality of the funds, surely one mechanism to do so is tell me about their pathway. Did they go from drug dealer A to drug dealer B, or did they go from bank A to bank B? Well, I certainly understand they can ask you to tell you about the pathway, and that's fine. We do tell them about the pathway. But the question is then, does the pathway have to comply with foreign law, right? Well, what does the reg say about that? The reg says nothing about law. That's right. That's my point. So the reg itself just says you have to demonstrate the pathway. What you're really arguing is that a pathway that's illegal under foreign law doesn't meet the requirement of the first reg, which is that the funds must be legal, right? And that's what the agency says, too, because they allow the family and friends method. I did want to try to reserve the rest of my time. Okay, thank you. Thank you. Mr. Goldsmith. Your Honor, may it please the Court, Aaron Goldsmith on behalf of the government. The decision of the district court should be affirmed because we are not writing on a blank slate here. And I could just briefly, where we are is we have a statute from 1990. We have a regulation from 1991. Then in 1998, there were a quartet of administrative decisions, most significantly matter of Ho and matter of Zuni, which deal with this tracing, the requirement to trace the source of funds. And then this court in RL Investments addressed whether or not the agency's reading of its regulations was impermissible, particularly there was an argument raised as to whether or not the reading of the regulations were contrary to statute. And this court adopted the district court's opinion, which said that the agency was not contravening the statute. And specifically, if you look at the appellate briefing in RL Investments, they raised this issue of is the agency acting beyond the scope of the statute. On page 13 of the reply briefing, and to be precise, they raised the argument that the tracing requirement was beyond the scope of and inconsistent with the statute. And furthermore, they made the argument that the statute makes no requirement whatsoever that a person must demonstrate or trace the source of his funds, more so the funds of anyone else. So that was the argument that was made. This court adopted the district court's opinion and then reiterated in Spencer Enterprises, saying RL Investments is the binding precedent in this circuit. So we're not coming in with a clean slate as to whether or not there should be a tracing requirement. This court addressed that more than 20 years ago. Now, here the... Let's assume, just for purposes of discussion, that the Supreme Court throws out the Chevron doctrine. Correct. This term. Does that affect the continued validity of the RL decision? I don't think so for a couple reasons. I don't think you need Chevron to get to this result. No, I don't think you'd... You may not... I'm asking a very specific question. Do you think RL relies at all on Chevron? I would say no. It says... And it was framed a little bit differently. I understand every case is a little bit different. So it was framed in terms of, okay, you have a matter of Azumi, a matter of Ho. There's this tracing requirement. Is that contrary to statute? And this court says no. And the tracing requirement is now in reg. Correct. Right, but they reiterated it in those binding administrative decisions back in 1998. And there was a question of, well, is this really changing the rules? And the court said no. So I think... Yeah, so let's assume that those administrative decisions aren't binding in some way on us anymore. Okay. Do we still get to the same conclusion, signing RL? I'm sorry. I wasn't clear. I was saying they were, when I said they're binding, I wasn't saying they were binding on this court. I was saying that they were... They bound the agency to this interpretation of the right. That is our definitive interpretation. And Congress has continued to reauthorize the program, didn't say we're not going to adopt that. As to your point on Chevron, I don't want to avoid directly addressing it. I would just say, even without Chevron, we're talking about capital, right? And the word capital has a certain connotation. No, I understand that argument, and I don't want to preclude you from making it. My question was a much narrower one. To the extent, I think, that RL rests on Chevron in some way, can we just say, well, we've already decided this issue, if the Supreme Court tells us in four months Chevron is no longer good law? I'm not sure it rests entirely on Chevron. And as to what the court will do with Chevron in the future, I don't know. Yeah, of course we don't know. We could wait for it, I suppose. Right, but I don't think it's necessary in this case because the word capital has, one, a certain connotation, and two, you look, even without Chevron, you look at words in the context of the statute. All right, how about without RL? Let's assume we're just approaching this with no previous case law on it. What conclusion should we reach? Just to make sure I understand your hypothetical. If you're saying, if you're getting rid of matter of RL. Yeah, I'm putting it aside because I'm not sure how much it rests on. And you're putting aside Chevron also for purposes. Yes. Okay, so I just want to make sure I understand your hypothetical. So then you just look at the statute and try to determine what it says. And the word capital, you look at it in the context of this is a program, right? They're trying to encourage investment, and you're asking, in that context, would it be logical to say that Congress would be indifferent if the money came from an unlawful source? And the word capital has a certain connotation. The connotation is lawful. You wouldn't generally refer to a drug dealer as a capitalist unless you meant it in a tongue-in-cheek manner. And the same way here, it wouldn't make sense to read that as. . . But it doesn't use the word capitalist. I mean, if a drug dealer came to somebody and said, I'd like to put a million dollars into your business, I would think he would be referring to capital, wouldn't he? I don't think we would generally refer to it in that manner. Although the word capital is open to interpretation. There are different meanings of the word capital. So I think that's the point you're making. But the fact that there's multiple meanings is one reason why Chevron should apply. And just if I could briefly talk about the facts. . . The key point is, in this case, for one of the entities, for Rainbow, there were no bank statements provided at all. Then for the other entity, the Harvey Law Group, there were bank statements, but they were missing pages. That's what the agency found. So I understand other countries don't have, in counsel's view, the same robust system of recordkeeping. But that kind of understates what we have here. We're having account statements that are missing pages. And then with respect to Rainbow, if you look at page 122 and 124 of the excerpts of record, the issues were quite serious. You're talking about an entity that, if you go to the business, their name is not on the door. They don't file any returns. They don't appear to have employees or an operating business. And at that location, there seems to be some kind of secretarial pool. So there are some real red flags about both entities in this case. So as to what the word capital means, we don't even get to that question because they couldn't document or trace the path of the funds. But isn't the tracing requirement to demonstrate the legality of the funds? Primarily, but there's also concern about making sure the funds are actually the EB-5 investors' funds, right, that you don't want someone who is a complete stranger to the transaction to get a visa when, in fact, someone unrelated or perhaps a family member is the actual investor. That was kind of hinted at, and I believe, well, it was in the quartet of those four administrative decisions. I know you asked me to set those aside. No, but I'm interested. I understand that the tracing is sort of, show me they're yours. But in this case, it does seem to me the turndown was you can't demonstrate through your evidence of tracing that these are legal. Is that fair? That was part of it, yes, because that is language taken directly from the decision, yes. And so there could be a separate requirement for tracing, just demonstrate that they're yours. That wasn't why this applicant was turned down, was it? It wasn't that these are not your funds. It's just you haven't demonstrated they came from a legal source. Right. You used two third parties, and you couldn't trace those funds. Now, the tracing requirement was rooted in the regulation, but also those decisions. A matter of ho, the question was there was a doctor who said, the funds came from my medical practice. That was the source of the funds, but they couldn't document it. I think we're missing each other. I thought the evidence in this case was rather clear that at the front end, the money that was put into these currency swaps came from Mr. Wynn. They were his funds, correct? That wasn't denied on that basis. Go ahead. Okay, so the whole idea of having this reg to make sure it's your money isn't really the issue in this case. The tracing reg in this case is to demonstrate the legality of the transaction. I mean, the tracing requirement was for two different purposes, but here, you're right, this is the issue. The issue is, is the source of the funds lawful? And here, it's not that there's some – Okay, now, that takes me to I think the point your friend was trying to make, because I want you to respond to it. The question in this case doesn't seem – it seems to turn a little bit about whether or not the transactions that got the funds from point A to point B, whatever their original source, were legal under foreign law, Vietnamese law. Well, how does that come – how do the regs – how do you justify that? I'd push back a little bit on that. It's not simply that the account statements didn't show that it was a lawful source. It's that there were no account statements for Rainbow. That would be – I mean, I think what you're getting at is a different case than the case that we have before us. The case before us is you didn't trace them at all. You could not document where the funds came from if they had documented it and then denied on the grounds that this is not lawful or this doesn't meet the definition of capital as defined by the agency. That would be a different case. Did they deny on the basis of the – you haven't shown that the transaction – the currency swaps, if you will, were legal under foreign law? Well, you didn't demonstrate the source of the funds and you couldn't demonstrate that they were lawful. Whose funds are you referring to there? I'm referring to the – yeah, that's a good point, Your Honor. It's the funds that went to – from Rainbow and that were ultimately the funds that were deposited in the United States. I had trouble as I went through this and listening to you now. I want to be clear because they're two separate questions. Where is the money coming from – I'll call it from within Vietnam and the others. Where does the money come from the swap partner? In this case, it's Rainbow. That is different, yes, but you have to demonstrate the source of funds because the funds – the Vietnam funds never left Vietnam. The funds that were actually deposited in the United States were the other funds, the Rainbow funds. So that's why you're interested in both pieces. Correct. We don't want the program to be used for money laundering. And I would just say, you know, the district court correctly viewed the facts in the record. They correctly saw that the documents in the administrative record did not compel the agency to find otherwise. And moreover, the district court correctly viewed the law, correctly read this court's precedent, and for that reason, the decision of the district court should be affirmed. Thank you, Your Honor. Before you sit down, Judge Rawlinson, any questions for counsel? No, thank you. Thank you, Your Honor. You have about a minute and a half for rebuttal. Thank you. So I did want to get into this point about the money never leaving Vietnam. No matter how you do it, the money never leaves Vietnam. If you go to a bank and you wire money, they don't put your money on a plane and it leaves Vietnam. It then goes to another bank somewhere else outside of the country, and they use their dollars from depositors who could be anyone to do it. This whole idea, we have to treat it differently because it's not a bank, never really sat well with me. And then I also want to try to distinguish the 2000 RL case. Which never cites Chevron, by the way. Well, it also never finds that the lawful source of funds requirement is required by the statute, right? It's all about tracing. And here we have a little bit of a different situation. Here we have a situation where the tracing requirement doesn't use the word lawful, and we have lots of evidence of a shift, right? In RL, they were saying there was no evidence of a shift. There's just a few cases it could have been a mistake. The record has a lot of evidence of the shift, and we don't really have any sort of denial. Well, we do have a denial, but in the light of this evidence, we can't really credit it. There was a shift. Something happened. They're now reading the word lawful into PATH. This is sort of the conversation you were having with opposing counsel. Now, apparently, we need to satisfy foreign law as to our transfers. We used to not have to do that in the past. But did they turn you down on that basis? Excuse me? Yes, that was a basis of the denial. That's in the denial notice. I see that my time has expired, but I'm happy to answer any other questions. Any member of the panel have more questions? No. If not, we thank both counsel for their arguments. This case will be submitted, and we will be in recess. All rise.
judges: RAWLINSON, CLIFTON, HURWITZ